| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK | Return Date:<br>November 4, 2009 @ 10:00 A.M. |

------------------------------------------------------x
In re:                                              Chapter 11

TAMPA ENCLAVE 52 LLC,                               Case No. 09-15441-ALG

                              Debtor.
------------------------------------------------------x

## DEBTOR'S OPPOSITION TO COMPASS BANK'S
## MOTION TO LIFT THE AUTOMATIC STAY

       The debtor herein, Tampa Enclave 52 LLC (the "Debtor"), as and for its Opposition to the motion of Compass Bank seeking relief from the automatic stay, represents and shows this Court as follows.

       1.    Compass Bank has moved to lift the automatic stay at what is still an early stage of this Chapter 11 proceeding. In the process, Compass Bank goes no further than resting upon its having obtained a judgment of foreclosure prior to the Chapter 11 filing, and its assertion that the Debtor's property lacks equity, and ignores any discussions of the Debtor's overall reorganization prospects.

       2.    In defense of this motion, the Debtor seeks only a fair and reasonable opportunity to seek buyers, either for the individual apartments, or for the complex as a whole, so that it can restructure its mortgage debt. To this end, the Debtor intends to move shortly for an Order authorizing the retention of a real estate broker, after it has completed discussions with Compass Bank over the terms of the retention or a joint marketing plan.

3. The Debtor can not reasonably be expected to have all of the answers in the early stages of the Chapter 11 proceeding. The real question is how best to balance the respective rights and interests of the Debtor and its lender, Compass Bank, under a framework that establishes certain benchmarks and monitors the Debtor's progress, while making sure Compass Bank's collateral is adequately protected and preserved.

4. It is respectfully submitted that the stay should remain in place for a reasonable period of time, while the broker seeks buyers.

## BACKGROUND

5. The Debtor is the owner of a condominium development in Tampa, Florida known as "The Promenade at Tampa Palms" containing 240 units (the "Property"). Approximately 144 of the units in the complex remain unsold. The project was financed by Compass Bank, which is owed a principal balance of $18,217.292.06 on its first mortgage secured by the unsold units.

6. Compass Bank instituted foreclosure proceedings in Hillsborough County, Florida and obtained a judgment of foreclosure. That action was stayed by the instant Chapter 11 filing.

7. The Debtor is owned indirectly by OFEK International Real Estate Ltd. ("OFEK"), a company organized under the laws of the sovereign nation of Israel. OFEK is currently undergoing insolvency proceedings in the District Court for Tel Aviv – (Bankruptcy File 1619/09). The Israeli insolvency proceedings were precipitated by the death of OFEK's principal, Elie Berdugo, who died on February 12, 2008.

8. The instant bankruptcy proceeding was commenced by Jacob Sabo, the Temporary Liquidator of OFEK, under his authority as granted in the Israeli insolvency proceedings.

## THERE IS NO BASIS TO LIFT THE AUTOMATIC STAY UNDER 11 U.S.C. § 362(d)

9. Compass Bank's request to lift the automatic stay raises issues of fact, particularly as to the current value of the Property, whether the Property is necessary to an effective reorganization and whether Compass Bank can be adequately protected during the pendency of the case.

10. Compass Bank bases its motion primarily upon a purported lack of equity, arguing that the Property has a value of only about $12 million based on a written appraisal submitted by Compass Bank as <u>Exhibit</u> "4" to the motion papers.

11. The appraisal uses two different methods of analysis, market approach and income approach. Importantly, as shown by the charts on pages 142-145 of the appraisal, the projected recovery from the sale of the 144 individual apartments is in excess of $24,000,000 over a five year period. However, the appraiser than artificially reduces this value to a present value of only $11,240,000, and estimates, without analysis or support, that a purchaser would pay only 25% or $8,430,000 to buy the entire Property in a bulk bid.

12. It is respectfully submitted that these unexplained and self-serving adjustments should be regarded with great skepticism by the Court, as they are entirely speculative and unjustified.

13. The debate over the proper adjustments to the value should not, however, deflect the Court's attention from the key point - Compass Bank's own appraiser concedes that there is $6 million of equity in the Property over and above the $18 million owed to Compass Bank based on a total recovery projected at more than $24 million from the sale of the apartments.

14. Moreover, in the background notes to the appraisal, it is further conceded that prospects for such a sale are good, despite the nationwide economic slowdown. For example, on page 51 of the appraisal, it is explained that "In the long term, the [Tampa] metro area's robust demographic trends will create a heady demand for housing and services. [Tampa's] growing prominence as a center of international trade will also support healthy expansion. As such, [Tampa] will be an above average performer over the forecast horizon."

15. Similarly, on page 67, the appraiser states that "Overall, the subject has an excellent location and should benefit from its immediate surrounding neighborhoods . . . as well as other traffic along Bruce B. Downs Boulevard . . . The long-term outlook for the Bruce B. Downs Boulevard corridor is positive we expect continued rapid growth."

16. Finally, on page 69, the appraiser states that "Apartment acquisitions may have been overpriced in recent deals, but the property category [multifamily complexes] appears well positioned to take advantage of demographic trends and housing market distress. In fact, moderate-income apartment communities are considered a best by by [sic] Emerging Trends."

17. Furthermore, even as the parties debate equity, there can be no disputing that the Property is essential to an effective reorganization. It constitutes the Debtor's most vital asset and greatest potential for funding a plan. In this regard, the Debtor understands the Supreme Court admonition that an effective reorganization typically means that "there must be a reasonable possibility of a successful reorganization within a reasonable time. United Savings Association v. Timbers of Inwood Forest Associates, Ltd., 484 U.S.365, 375-76, 180 S.Ct. 626 (1987). However, the Supreme Court also noted that when the motion is made in the early stages of the case, prior to the termination of exclusivity, the courts "demand less detailed showings" of reorganization prospects. Id. at 376.

18. The Debtor respectfully submits that at this early stage of the case, with more than two months of exclusivity remaining, the Debtor should be permitted to explore structuring a sale on terms acceptable to Compass Bank and the Israeli Liquidator, rather than letting any potential recovery be lost through foreclosure.

19. Compass Bank argues that the Debtor cannot meet its burden to show that the Property is necessary to an effective reorganization because the Debtor has no equity in the Property. This is a non-sequitur. Even without equity, the Debtor is still capable of negotiating a plan with Compass Bank, and, perhaps, dealing with Compass Bank's lien over its objection, although the hope and intent is to work constructively with the lender.

20. Operationally, given that the Debtor has 144 units to sell, and is currently renting over 90% of these units, the Debtor has a reasonable prospect of

restructuring its cash flow to the point where it can better address the mortgage debt, and provide adequate protection to Compass Bank.

21. Finally, it should be noted that Compass Bank also seeks relief under the provisions of Section 362(d)(3), which require a debtor to take certain actions within 90 days of the filing. In this case, with the petition having been filed on September 9, the deadlines set forth in Section 362(d)(3) do not expire until December 8, 2009, while there is cash flow to pay debt service moving forward.

22. Therefore, the motion is premature with respect to any relief under Section 362(d)(3).

23. In short, there is a myriad of possibilities short of foreclosure - and just two months into the Debtor's exclusive period in which to file a plan, it is still too early to make a finding that this Debtor will never be able to confirm a plan.

WHEREFORE, for all of the reasons set forth herein, Compass Bank's motion should be denied consistent with the foregoing, together with such other and further relief as is just and proper.

Dated: New York, New York
November 3, 2009

GOLDBERG WEPRIN
FINKEL GOLDSTEIN LLP
Attorneys for the Debtor
1501 Broadway, 22nd Floor
New York, New York 10036
(212) 221-5700

By: /s/ Kevin J. Nash, Esq.
A Member of the Firm