```
 1              UNITED STATES BANKRUPTCY COURT
               SOUTHERN DISTRICT OF NEW YORK
 2
   ---------------------------------------X
 3  In Re:                          :   09-15440 (ALG)
                                    :   09-15441
 4      GREENWICH STREET DEVELOPERS and   :
         TAMPA BAY ENCLAVE 52 LLC,        :   One Bowling Green
 5                                   :   New York, New York
            Debtors.                :
 6  ---------------------------------------X  November 4, 2009

 7

       TRANSCRIPT OF MOTION FOR ORDER GRANTING RELIEF FROM STAY
 8            BEFORE THE HONORABLE ALLAN L. GROPPER
                 UNITED STATES BANKRUPTCY JUDGE
 9

10  TRANSCRIPT ORDERED BY:

11      SANDRA THOMPSON, ESQ.
          (Hahn & Hessen)
12

13  APPEARANCES:

14  For the Debtors:         KEVIN J. NASH, ESQ.
                             Goldberg, Weprin, Finkel, Goldstein
15                           LLP
                             1501 Broadway
16                           New York, New York  10036

17  For Compass Bank:        JOSHUA I. DIVACK, ESQ.
                             JOHN P. AMATO, ESQ.
18                           JEFFREY ZAWADZKI, ESQ.
                             Hahn & Hessen LLP
19                           488 Madison Avenue
                             New York, New York  10022
20

21

22
                  REGENCY REPORTING, INC.
23          Certified Court Reporters & Videographers
       425 Eagle Rock Avenue      575 Madison Avenue
24     Roseland, NJ 07068        New York, NY 10022
          www.regencyreporting.net   1-866-268-7866
25
```

1    THE COURT:  Greenwich Street Developers and Tampa

2  Enclave.

3    May I have appearances?

4    MR. NASH:  Good morning, Your Honor.  Kevin Nash for

5  the debtor.

6    MR. DIVACK:  Your Honor, Josh Divack of Hahn & Hessen

7  for Compass Bank in the Tampa matter.  With me is my partner,

8  John Amato, and my colleague, Jeffrey Zawadzki.

9    MR. NASH:  Your Honor, we get to the motions if you

10 would allow me I'd like to give you some background that would

11 be --

12   THE COURT:  I've read the papers.  You can give me a

13 little bit of background if you wish.

14   MR. NASH:  All right.

15   THE COURT:  Then we'll get to the problems.

16   MR. NASH:  Yes, we'll get to the problems.  We're

17 here because of problems --

18   THE COURT:  Obviously.

19   MR. NASH:  Obviously.

20   THE COURT:  Problems that as far as I can see have

21 not been attended to at all.  What is the filing date?

22   MR. NASH:  September 9th.

23   THE COURT:  September 9th and now it's November 4th,

24 almost two months later and as far as I can see nothing has

25 been done by your absent Israeli owner controlling party.  The

1   property in Florida, apparently, is operating so you have to

2   have a manager.  I assume you have a manager down there.

3           MR. NASH:  We do.

4           THE COURT:  You obviously haven't paid a penny to the

5   mortgagee.  You've got a mortgage up here, too?

6           MR. NASH:  I do.

7           THE COURT:  A vacant lot?  Is that --

8           MR. NASH:  It is.

9           THE COURT:  It is vacant so --

10          MR. NASH:  If I could just --

11          THE COURT:  -- it's a little easier for it to sit

12  there even though our weather isn't quite as good as Tampa.

13          MR. NASH:  No.  Just some brief background.

14          The Israeli, he's a liquidator --

15          THE COURT:  He died.  The owner died.

16          MR. NASH:  The owner died.  His corporation --

17          THE COURT:  But that's some time ago.

18          MR. NASH:  -- went into receivership.  The Israel

19  Insolvency Corp. appointed a gentleman by the name of Jacob

20  Sabo, who is functionally equivalent of a trustee under Israeli

21  law.  The entity that's in the receivership or the insolvency

22  proceeding in Israel is called OFEC.  OFEC indirectly owns two

23  pieces of American property; one is the Tampa condominium, the

24  other is the property in Greenwich.

25          THE COURT:  Greenwich Street.

1          MR. NASH:  Greenwich Street.  The liquidator's

2   mandate is to see if there's any value to be --

3          THE COURT:  Okay.  He's been taking his time doing --

4          MR. NASH:  Well, no --

5          THE COURT:  Has he been over here several times?  The

6   time to come over here, obviously, is December of January to

7   inspect the Tampa, Florida property.

8          MR. NASH:  I think he's in Tel Aviv.  The weather is

9   just as good there.

10         THE COURT:  That's true.

11         MR. NASH:  I've been to Tel Aviv, it kind of looks

12  like Florida so if you close your eyes a little bit you think

13  you're on Miami beach.

14         In any event -- the boardwalk, Judge.

15                    (Pause in proceedings)

16         MR. NASH:  Can I get to the chase?

17         THE COURT:  Let's get to the chase.

18         MR. NASH:  Because he is serious about doing

19  something.

20         Now, I think we're going to do something positively

21  with the Greenwich Street property and work in conjunction with

22  the mortgage holder on a joint marketing plan and so that's why

23  you haven't seen any action out of New York; we're going to put

24  a joint marketing plan together.  I was hoping to do the same

25  with Compass Bank in Florida.

1      Now, there are 144 condominiums.  As best as I can
2  tell they took possession under the Florida laws and they've
3  been collecting rent and these 144 apartments do generate cash
4  flow and it's not insignificant cash flow.  So there is a
5  collection of rent and I haven't stopped them from collecting
6  rent and I am working with a long distance receiver in New York
7  and it's difficult for me to have him come over here and the
8  son of the deceased shareholder is in Boca Raton, Florida so
9  he's my nearest point of relief to Tampa Bay.
10      Having said all of that -- and there are problems
11  here and, unfortunately, if you look at this property now
12  there's an obvious issue over value and equity and I'm not
13  hiding from the fact but on a long-term basis I don't think
14  it's as dire as the bank makes it out to be.
15      THE COURT:  So what do you want to do today?
16      MR. NASH:  What I'd like to do today is what I hoped
17  to do in the beginning.  I know I'm on borrowed time in Tampa.
18  I make no bones about it, I don't come in here with great
19  expectations but I just want -- and he wants to satisfy the
20  Israeli court -- an opportunity to just sit down with this bank
21  and I know they're begrudging me, they don't want to sit down,
22  they just want the property back, they just want this and they
23  just want that, however, I understand that in the local area
24  there is interest in this property.  We field all those
25  potential interests to the bank through Compass.  I understand

1  that the note might be in play.  So I don't think -- you know,

2  when they say they want the property back they really want a

3  check and I've got to get them a check that makes sense to them

4  and that does something for the rest of the estate.

5       Having said that, what I'd really like is about three

6  weeks to fish or cut bait to see if I can bring them something

7  that's viable.  If I can't I understand this can't go on

8  forever and that's what I really want, three weeks to fish or

9  cut bait and see what I can do with them on a somewhat even

10 playing field even though I have a long way to go.  I know it's

11 a hill but I just want to be able to climb the hill in three

12 weeks time.

13      At the end of the day I'm not making anything without

14 their consent.

15      THE COURT:  Three weeks.  Unless they consent they

16 get relief from the stay.

17      MR. NASH:  Yes.  That's all I can ask for.

18      THE COURT:  Yes or no, Mr. Divack?

19      MR. DIVACK:  Three weeks.  Absolute and discretionary

20 consent, Your Honor?

21      THE COURT:  Right.  That's what I hear.

22      MR. DIVACK:  Bearing in mind that the debtor's

23 valuation in the schedules for this property is $5 million or

24 $6 million as against $18.7 million of judgment on a fully

25 matured obligation.

```
 1          THE COURT:  Well, I don't know that what they said
 2   it's worth is determinative but Mr. Nash has many other
 3   problems.  But three weeks?  Yes or no?
 4          MR. DIVACK:  Yes.
 5          THE COURT:  All right.  Why don't you get an order
 6   together and you can go in the next room or you can get an
 7   order and send it in and I'll sign it.
 8          Mr. Nash, I'll tell you what I had in store for you
 9   because you might as well know that if you come back or there's
10   a problem here this case as far as I'm concerned should go to
11   Tampa, Florida.  I don't know that that would do your client
12   very much good since I see three lawyers here today who have
13   gotten up to speed on the case because you brought it here but
14   under Rule 1014(a) I can make a sua sponte motion.  I give you
15   a right to a hearing.  You have a right to a hearing, Mr. Nash,
16   on transfer but this is a Florida case.  I don't know what this
17   property is worth.  If it's contested -- and it's not, we're
18   beyond that but on general principles this case should go to
19   Florida.  So maybe you both avoid that by three weeks.
20          Certainly, I'll sign an appropriate order and that
21   will be the end of that case.
22          MR. DIVACK:  Your Honor, just so I understand it.  If
23   there's no accepted deal within three weeks the stay lifts or
24   the case goes to Florida?
25          THE COURT:  The stay lifts.
```

1    MR. DIVACK:  Thank you, Your Honor.

2    THE COURT:  I don't know whether there will be

3    anything further to do in the case, frankly, but I think it

4    would be an abuse of --

5    MR. NASH:  Why don't we just dismiss it?  If stay

6    lifts so dismiss wherever you want.

7    MR. DIVACK:  If we dismiss the case, Your Honor, I

8    have to worry about a new filing, a new automatic stay, etc.,

9    etc.

10    MR. NASH:  All right.  Fine.

11    THE COURT:  Once the stay lifts.

12    MR. DIVACK:  Thank you, Your Honor.

13    THE COURT:  I could certainly send it to Florida

14    today but I think that would cost the parties more money,

15    probably unnecessarily.

16    Now, with your other case, Mr. Nash, I'll put it over

17    but in the meantime before you come back next time you've got

18    to take a look at Section 1511 of the Bankruptcy Code.

19    I know you don't want to make new law --

20    MR. NASH:  I did -- I kind of --

21    THE COURT:  -- and spend your client's money on it.

22    MR. NASH:  I did look at it.

23    THE COURT:  I've got other things to do but Section

24    1511 says -- I won't take everybody's time -- 1511 says, upon

25    recognition a foreign representative may commence, subsection

1  2, a voluntary case under Section 301 or 302 for foreign

2  proceedings of foreign main proceeding.

3       No one has ever determined the issue as to whether a

4  foreign representative can appear as the debtor-in-possession

5  as the foreign representative certainly could under Section 304

6  and did in several cases.

7       So it seems to me that you have one of two choices;

8  one is if you have U.S. management -- and these are

9  corporations or limited liability companies -- somebody has got

10 to be the managing agent.  I would suppose the managing agent

11 could possibly, even though he or she was subject to the

12 ultimate control of the foreign liquidator as the shareholder,

13 file a voluntary petition but that's not what you've done.  You

14 filed it in the name of Mr. Sabo.

15       MR. NASH:  Well, I filed it as a signatory.

16       THE COURT:  As a signatory.

17       MR. NASH:  Yes.

18       THE COURT:  So I think what you've got to do is come

19 back to me ont he Greenwich case -- both cases if they survive

20 -- and tell me who the U.S. management is and have the U.S.

21 management confirm the filing or refile or something of that

22 nature.  I would think that might work and there are a couple

23 of cases --

24       MR. NASH:  I know.  I read Judge Lefrand's case on

25 it.  I thought I was --

1      THE COURT:  It's something like In Re:  IIDA and In

2  Re:  Loy touch on related issues but this is an undetermined

3  issue that I'm sure you don't want to get into at the expense

4  of your client.  I see that that's perhaps one thing that the

5  mortgagee here agrees with.

6      MR. NASH:  Yes, I'm sure.

7      THE COURT:  We'd just asoon not get into these

8  interesting issues.

9      So why don't I give you another date.  What date do

10  you suggest on Greenwich Street?

11      MR. NASH:  If you can give me a date in mid-December

12  I'd appreciate that.

13      THE COURT:  All right.  What about December 17th?

14      MR. NASH:  That would be fine, Judge.

15      THE COURT:  Thursday, December 17th at ten o'clock.

16      MR. NASH:  Thank you, Your Honor.

17      THE COURT:  Okay.  I'll look for an order that's been

18  agreed to by the parties.

19      MR. DIVACK:  Thank you, Your Honor.

20                * * * * *

21

22

23

24

25

1                    C E R T I F I C A T I O N

2

3                         * * * * *

4     I certify that the foregoing is a transcript from an

5  electronic sound recording of the proceedings in the above-

6  entitled matter taken on November 4th, 2009, except

7  where, as indicated, the Court has modified the

8  transcript.

9

10

11

12  CARLA NUTTER

13

14  Dated:  November 5, 2009

15

16

17

18

19

20

21

22

23

24

25